ANTOINE R. McNAIR et al., Plaintiffs in Error, v. HONORÉ PICOTTE et al., Defendants in Error.

*Mortgage — Payment.* — The payment or satisfaction of the mortgage debt avoids the mortgage deed, and the right of the mortgagor to the land is legal, not equitable. The failure to enter satisfaction upon the margin of the record may subject the mortgagee to penalties, but has no effect to keep the mortgage in existence.

## Error to Washington Circuit Court.

Plaintiffs filed their petition in the Circuit Court of Washington county for relief against certain sheriff's sales, under execution, of property mortgaged by the ancestor of their grantor, alleging that the judgments under which the sales were made were for the mortgage debt, and that subsequently the debtor had satisfied the mortgage debt, whereby he became entitled to be restored to the possession of the land into which defendants had entered under their sheriff's deed. The form of the petition was similar to that filed in the case of McNair et al. v. Lott et al., reported in 25 Mo. 182. One of the mortgages referred to is there copied at length.

To the petition was added a count in ejectment, which, upon motion of defendants, plaintiffs elected to strike out.

The court made the following finding of the facts.

This cause, having been submitted to the court for trial by consent of parties, the court finds the following facts:

That on the 7th day of January, 1819, John Baptiste Duchouquette and Marie Therese Brazeau each lent unto Charles D. Delassus two thousand dollars, for four years, at the interest of ten per cent. per annum, and Delassus exe-

cuted his notes to each of said parties for the principal sum
of $2,000, and four interest notes, of $200 each, to each of
said parties, payable on the 20th day of December, 1819,
1820, 1821 and 1822, and the two notes for the principal
were payable on the 20th day of December, 1822.  That De-
lassus, for the securing of said loans, made and delivered to
said parties two separate deeds of mortgage, and thereby con-
veyed to each of said parties in mortgage, a tract of land of
twenty arpens, in St. Louis county, and also the undivided
half of a tract of land of ten thousand arpens, in the county
of Washington, on a branch of Renault's creek, originally
conceded to Francis Tayon, of which concession a league
square was confirmed to Pierre Chouteau, in 1816, contain-
ing 7,056 arpens of land, and surveyed by the United States
as survey No. 2066, and the residue of said concession was
confirmed by act of Congress of 4th July, 1836, and surveyed
by the United States as survey No. 3265, containing 2,944
arpens of land, in the year 1845.   That the first interest note
of $200 due Brazeau was paid ; and the first interest note due
Duchouquette was taken up, by giving a new note for $55,
and the payment of $145, on the 7th of March, 1820.  That
the said $55 note, and all the other interest and principal
notes, were not paid at maturity, and the said mortgagees in-
stituted several suits in the St. Louis Circuit Court, on said
notes and mortgage deeds, to wit : Brazeau sued Delassus, in
debt, for the amount due on the notes secured by the mort-
gage to her, and also sued by petition for the foreclosure of
the mortgage ; and Duchouquette sued Delassus, in debt, for
the amount due on the notes secured by the mortgage to him,
and also for the $55 note of the 7th March, 1820, and also
sued by petition for the foreclosure of the mortgage.   On the
8th day of July, 1824, judgments were rendered in debt, in
favor of Brazeau, for $2,750, and also for the foreclosure of
the mortgage to her for the same amount ; and on the same
day judgments were rendered in favor of Duchouquette for
$2,827, in debt, and also for the foreclosure of the mortgage
to him for $2,750 ; that the judgments of foreclosure were

revived, by *scire facias*, at the July term, 1827, of the St. Louis Circuit Court, against the said Delassus and the mortgaged premises; that executions were issued on the judgments in debt in 1824, and were returned by order of the plaintiffs; that executions were issued on the judgments in debt, in favor of Duchouquette, returnable to the December term of the said court in the year 1827, and upon that execution the twenty arpens of land in St. Louis county were sold on the 13th day of December, 1827, to Theodore D. Papin, for $1,050; that an execution was issued in favor of Brazeau, on the judgment in debt, on the 25th day of September, 1828, to Washington county, and a levy was made thereunder upon the undivided half of said ten thousand arpens of land, on the 30th day of September, 1828, and upon advertisement duly made according to law the said lands in Washington county were sold at public sale, by the sheriff of said county, to John B. Duchouquette, the highest and best bidder therefor, on the 22d day of October, 1828, for the price and sum of $380, and the sheriff of Washington county made a deed therefor to said Duchouquette, and duly acknowledged the same according to law; and the said mortgages, notes, judgments *in rem* and *in personam*, writs of execution, and sheriff's deed, will more fully appear by reference to certified copies thereof set forth in the bill of exceptions in this cause.

The court further finds: that on the 19th day of December, 1827, Marie T. Brazeau and John B. Duchouquette made a deed to said Theodore D. Papin, for all their right, title and interest in and to said twenty arpens of land in St. Louis county, for the consideration of five dollars, as will more fully appear by reference to said deed, contained in the bill of exceptions in this case; that Theodore D. Papin was the son-in-law of Duchouquette; that said Papin was not the agent of Duchouquette at the time of said sale, or after said sale of 1827; that said Papin took possession of said twenty arpens of land under the said sheriff's sale and deed of 1827, and also under said deed from Duchouquette and Brazeau, of the 19th December, 1827, and not at the instance or request of

said Duchouquette ; that Duchouquette never took possession of said twenty arpens of land in St. Louis county, either before or after the said sheriff's sale to Papin of December 13th, 1827 ; that in ――――, 1832, Marie T. Brazeau made a deed of assignment to John B. Duchouquette, of all her right, title and interest in and to the mortgage debts, and judgments thereon in her favor, as will more fully appear by said deed ; that said Brazeau died in May, 1833, and the said Duchouquette died also in May, 1833 ; that Duchouquette made a will, and nominated his son, John B. Duchouquette, and his son-in-law, Theodore D. Papin, his executors ; and the said will was duly probated, and said executors were duly qualified, and letters testamentary were duly granted upon said estate of Duchouquette, as will more fully appear by said will and letters testamentary set forth in the bill of exceptions in this cause. That said Duchouquette left the following heirs at law, to wit : three daughters and three sons ; named, 1st, Melanie, who married Theodore D. Papin in 1821 or 1822— she died in 1833, after her father ; 2d, Thérèse, who married Honoré Picotte ; 3d, Elizabeth, who married John B. Lesperance, and had one child by him—she died in 1838 ; 4th, John B. Duchouquette, Jr., who died in 1844, leaving a widow and children—his widow married Lynch ; 5th, Louis, who died in the summer of 1833, after his father, without issue ; 6th, Joseph, who married and had children—he died after his father. That Duchouquette took possession under said sheriff's deed, for himself and no other person, of said tract of land, known as the league square, in Washington county, in the year 1830, and appointed one Lamarque his agent, who leased portions of the said tract known as the league square, United States survey 2066, as farming lands, to tenants, in the name of Duchouquette, and held possession of the other portions of said league square for mining and smelting purposes ; and the said possession of said Duchouquette and the heirs at law of said Duchouquette of said league square of land, as tenants in common with Chouteau and Sarpy, was adverse to Delassus and the plaintiffs, and all other persons, and

was open, notorious and continuous from the said year 1830 down to the commencement of this suit; that there is not any adverse possession, or other possession, proved by the defendants, of, in or to the tract of land, known as United States survey No. 3265, containing 2944 arpens of land, confirmed by act of Congress of the 4th of July, 1836, and surveyed in 1845 by the United States. That there is no evidence of any fraud, actual or constructive, in the recovery of the judgments *in rem* or *in personam*, or in the sheriff's sale of the real estate mortgaged in St. Louis, or in Washington county, or in any of the acts of Duchouquette or of Brazeau in regard thereto, or in the purchase of Papin, or of Duchouquette, of the said respective tracts of land.

And the court finds that the said loans, judgments and executions thereon, and all the proceedings and land sales thereunder, were fair and honest, and were without any fraud or oppression; that said Delassus removed from the city of St. Louis in 1825, in embarrassed circumstances; that said Delassus returned to St. Louis in the year 1836; that his agent, Marie P. Leduc, on the 12th day of December, 1836, having full power and authority in that behalf from said Delassus, compromised the balance remaining due upon the judgments *in personam* aforesaid, with the executors of said John B. Duchouquette, for the sum of $7,680; and the said executors of Duchouquette caused the judgments *in rem* and *in personam* to be entered satisfied on the margin of each record; and in the making of said compromise with said executors, the said Leduc, as agent and attorney in fact of said Delassus, and the said Delassus in person had full knowledge that the said lands in St. Louis county and in Washington county had been sold, and the amount of the said sales were credited to the said Delassus upon the said judgments, and the balance due on the judgments, after the said sales by the sheriff were deducted, was paid by said Leduc for said Delassus, and the said Delassus ratified the said acts of Leduc, and assented to the said sheriff's sales remaining valid and effectual, and waived all claims as mortgagor and

all right to redeem said lands as mortgagor or otherwise, and assented to the holding of the possession of the said lands in St. Louis county, and in Washington county, by the respective purchasers thereof, at sheriff's sale, as the owners thereof respectively; that the said judgments were assigned to the said Leduc by the executors of Duchouquette for $8,000, less four per cent. for the advance payment, and that the satisfaction of the judgments was not intended as a redemption of the mortgages by the parties, but only as a compromise of the balance of the debts due on the judgments by Delassus to the said Duchouquette and Brazeau.

The following facts were admitted by the respective parties by stipulations, duly signed by them, to wit:

1. That each party to this claims title to the land in contest under *paper title* as devised by and through Charles Dehault Delassus, who died in 1843.

2. That Delassus left one child and heir, Augustus Delassus.

3. That the deeds of mortgage of the 7th January, 1819, cover and include the land in controversy.

4. That M. P. Leduc was agent and attorney in fact to manage the business of Delassus, deceased.

5. That the copy of the assignment to Marie P. Leduc, dated 12th December, 1836, and the endorsements on the same, are a true copy of an *original genuine paper*.

The court further finds that after the compromise by Leduc, as agent of Delassus, of the balance due on the judgments, that said Leduc ordered the said executors of Duchouquette to enter satisfaction of the two judgments in debt on the 15th day of December, 1836, and on the same day said Delassus settled his accounts with his agent Marie P. Leduc, and the said $8,000 was charged by Leduc to Delassus, and a credit was given by Leduc to Delassus of three hundred and twenty dollars for discount on the said $8,000, for payment in anticipation, and that the same will more fully appear by reference to the assignment of the 12th of December, 1836, by the executors of Duchouquette to Marie P. Leduc, and the en-

dorsements thereon, and the account between Leduc and De-lassus, as the same appears in the bill of exceptions in this cause. That the said executors entered satisfaction on the margin of said judgments in debt and also for foreclosure on the 16th day of December, 1836; that said satisfaction was made by order of said Leduc, as agent of Delassus; that no other payment was made by Delassus' agent than the $7,680; that said payment was not intended as a redemption of the mortgaged premises by the said Delassus, or the said Leduc; that the mortgages were not regarded by the parties subsisting at the time of the payment of said $7,680, or at the time of the entry of satisfaction of the said judgments *in rem* and *in personam*, and that it was intended by said Delassus and the said executors of Duchouquette at the time of the entry of said satisfaction of said judgments to suffer the sheriff's sale of said lands to remain valid and effectual, and that the said Delassus and the executors of Duchouquette believed that said sales by the sheriff were valid and effectual at the time of the said compromise of the balance of the said judgments, and that said Delassus and his agent Leduc then knew that the parties in possession of the said two tracts of land were claiming under said Papin and said Duchouquette, and that they were claiming and holding the said land as their own property adversely to all other persons.

The court further finds that the heirs of John B. Duchouquette filed their petition for partition in March, 1839, in the Washington Circuit Court, against Felix Vallé and others, defendants, claiming the one undivided half of said 10,000 arpens of land, and asked for partition of said league square, known as United States survey No. 2066, and containing 7,056 arpens of land, and thereupon a decree was rendered for the sale of said 7,056 arpens of land, and the said land was sold by the sheriff of said Washington county to one Etienne Lamarque, who bought in good faith, for himself and for the heirs at law of J. B. Duchouquette, and that said Lamarque after said purchase conveyed in good faith to the heirs of Duchouquette the one undivided half of said league

square as stated in the answer, all of which will more fully appear by reference to the said deed of the sheriff to Lamarque, and to the deed of Lamarque to the said heirs of Duchouquette; that Joseph Duchouquette died, and under proceedings by his administrator before the Madison County Court, the interest of said Joseph in said league square of land was sold for the payment of debts against the estate of said Joseph, and Honoré Picotte became the purchaser at administrator's sale of said Joseph's interest in said land, and that said Picotte and his wife conveyed by deed all their right, title and interest in and to said league square of land unto Thomas Wilkinson and Rita his wife, by deed of the 29th day of May, 1858; that said Delassus returned to Louisiana in the year 1836, after the said compromise, and remained there until he died, in 1843: and the said Delassus well knew that the said lands were claimed and held by the purchasers at said sheriff's sale, and their representatives, for their own use and benefit. That said Delassus died intestate, leaving Augustus Delassus, his son, his sole heir-at-law; that Augustus conveyed one undivided half of one-half of said ten thousand arpens to Antoine R. McNair, and the other undivided half of one-half of said ten thousand arpens to Jules Dennis in trust for the sole and separate use of the wife of the said Augustus Delassus, in the year 1848, as will appear more fully by said deeds; and said McNair conveyed one-fourth of his half of one-half to George W. Goode, and one other fourth of his half to plaintiffs, Wade and Osborne, as will more fully appear by said deeds, and that the defendants are the heirs-at-law and the legal representatives of John B. Duchouquette, as named in the amended petition filed the 7th day of July 1858.

And upon the foregoing facts the court finds the following conclusions of law:

That the sheriff's sale to Papin and the sheriff's sale to Duchouquette are each of them void; that the sheriff's deed to Duchouquette was and is good as color of title to commence the adverse possession of Duchouquette thereunder; and the possession of Duchouquette thereunder, and of his

heirs and legal representatives, for the period of twenty-five years next before the commencement of this suit, being adverse to all other persons, bars and precludes the plaintiffs from any relief claimed in their petition against the defendants for the said league square of land, being United States survey No. 2066, and every part thereof, and vests a title in the defendants in fee simple, absolute in and to said 7,056 arpens of land. That the compromise and settlement of 1836, and the entry of satisfaction on the margin of said judgments by the executors of Duchouquette, do not operate to prevent the running of the statute of limitations in favor of the heirs of Duchouquette and his and their legal representatives as to the said league square of land, survey No. 2066, and do not operate as any recognition of the mortgages as subsisting mortgages as against the said lands sold at sheriff's sale, and then in the adverse possession of the defendants and those under whom they claim. That as to the United States survey No. 3265 for 2,944 arpens of land, the said tract of land had no legal existence or definite location until the confirmation of the 4th of July, 1836, and never having been in the actual or constructive possession of the. defendants or those through whom they claim, and said debts having been compromised and the said judgments satisfied, the said plaintiffs, as the legal representatives of said C. Dehault Delassus, are entitled to a decree of this court to operate as a transfer of all the right, title and estate of the defendants to the plaintiffs, according to their interests therein, and to said tract of 2,944 arpens of land, being United States survey No. 3265, and the plaintiffs are bound to pay all the costs of this suit.       J. H. STONE, *Judge of the*
June 7, 1860.       *Circuit Court of Washington Co.*

Plaintiffs then made and filed their application and motion for review, under the law of 1849, which was overruled by the court, and plaintiffs excepted, and appealed.

*Cates & Wood et al.*, for appellants.

I. The sheriff's deed to Papin for the twenty arpens of

land in St. Louis county, and the sheriff's deed to John B. Duchouquette (mortgagee) for the mortgaged lands in Washington county, were each and both void and were not valid for any purpose ; at best it was an attempt to sell and convey the equity of redemption, and as Papin not only failed to redeem, but himself, as executor of Duchouquette, was the chief agent in enforcing the payment of the mortgage debts by Delassus, in 1836, the equity of redemption was restored to Delassus by the payment. (8 Mo. 204 ; 1 Pick. 351 ; Lumley v. Robinson, 26 Mo. 367 ; Benton v. O'Fallon, 8 Mo. 650 ; 1 Green Chy. N. Y. 349 ; Holridge v. Gillispie, 2 Johnson's Chy. 32.)

II. The deed from the mortgagees, Brazeau and Duchouquette to Theodore D. Papin, dated December 19, 1827, by which they attempt to convey their right, as mortgagees, in the land, and at the same time reserve the mortgage debts, is a nullity and conveys nothing. (1 Hilliard on Mortgages, 164-5-6-9 ; Jackson v. Bloodget, 5 Cow. 206 ; 2 Cow. 195 ; Thayer v. Campbell, 9 Mo. 282.)

III. The payment by Delassus, in December, 1836, of the sum of $8,000, was an accounting as to the mortgage debts. Up to that time, after foreclosure of the mortgages, the mortgagees had a right to retain the possession of the mortgaged property, and Delassus had no cause of action to recover the mortgaged land or the possession thereof; and in this action limitations did not commence to run against Delassus, or plaintiffs under him, until the payment of the mortgage debts in December, 1836. (Angell & Ames, 410, § 11—p. 397, § 2—p. 495, § 9, 10, 11 & 12 ; Bollinger v. Chouteau, 20 Mo. 93 ; 18 Vesey, 455 & n. a.)

IV. The deed of the mortgagees, Brazeau and Duchouquette, to Papin, of 19th December, 1827, and other evidence preserved in the record, proves notice of the mortgages in Papin at the time of his purchase of the twenty arpens, and, having notice of the existence of the mortgages, he was further bound with notice of all the facts and circumstances, to a knowledge of which he would have been led by inquiry as to

the condition of the mortgage encumbrance, and was bound with notice of the judgments of debt and foreclosure, and that the execution sale was under the judgment in debt. And there is evidence to prove that Papin had personal knowledge of all these facts. (1 Johns. Chy. 398, note *a.* ; Tolland v. Stanbridge, 3 Vesey, 478 ; 2 Cow. 320 ; 5 Gill & L. 85 ; 2 Sch. & Lef. 327--8 ; Hausand v. Hauf. 18 Vesey, 462.)

V. The deed from Brazeau and Duchouquette, of 19th December, 1827, to Papin—at best for Papin—operated to make Papin assignee of the mortgagees, if valid for any purpose to his advantage ; and as such assignee, he took, subject to all the equities known or unknown to him, between the mortgagor and mortgagees.

VI. The transfer by Duchouquette and Brazean, the mortgagees, to Papin, the purchaser, at sheriff's sale, on terms reserving the mortgage debts, with power to collect them ; even if the sale to Papin had been valid, operated to open the foreclosure of the mortgages, and restore to Delassus the right of redemption. (Sylvester v. Dolland, 1 Vesey, Jr. 434 ; Perry v. Parker, 8 Vesey, Jr. 527 and notes ; 13 Vesey, 198.)

VII. There is nothing in the assignment of 12th December, 1836, by the executors of Duchouquette to Leduc, or the endorsement thereon, or in the evidence connected with the transactions of the 12th and 15th December, 1836, that shows or proves any act or thing done by Delassus, whereby he parted with any interest or right he then had or owned in the mortgaged premises ; and parol evidence is not competent for such a purpose. (Holdridge v. Gillispie, 2 Johns. Chy. 33.)

VIII. If, under mistake or ignorance of his rights, or from fraud of others, Delassus supposed his title to the mortgaged lands was gone at the time of payment in December, 1836, he failed to assert claim to said lands, he would not thereby, nor are his heirs or representatives, precluded or estopped from asserting their rights when ascertained and known, nor will such mistake or ignorance in Delassus bar

plaintiffs from recovery in this suit. (Russell v. Southard, and others, 12 Howard, 142, 146–57.)

IX. In December, 1836, the mortgagees and others under them, having then for some years been in possession of the mortgaged premises, were bound, on settling with the mortgagor for the mortgage debts, to account for the rents and profits of the mortgaged premises while in their possession, and the mortgagor, Delassus, was entitled to a deduction from the mortgage debts for such rents and profits.

X. A court of equity will never sanction an arrangement by which the right of redemption is surrendered without an adequate consideration. And in this case, if Delassus, under mistake or ignorance of his rights and in circumstances of pressing necessity, paid the mortgaged debts in December, 1836, although he may have believed or said that he had lost the mortgaged lands, the court ought to relieve against such a transaction and save the mortgagor his right to redeem. (12 How. 142, 153, 155; Holdridge v. Gillispie, 2 Johns. Chy. 32; Henry v. Davis, 7 Johns. Chy. 41.)

XI. Delassus, in December, 1836, had the right, by payment of the mortgage debts, to redeem the mortgaged property, and the payment by him at that time of the sum of $8,000, and the entry of satisfaction of the judgments for the mortgage debts by the executors, operated to redeem the mortgaged property in equity, even if Delassus, under mistake or misapprehension, supposed the sheriff's sales of the mortgaged property were valid and vested title in the purchasers. (12 How. 142.)

XII. If, in the settlement of the mortgage debts of 1836, the parties, under mistake of the rights of the mortgagor, gave credit on the mortgage debts for amount of bids on the said sheriff's sales, and gave no credit for rents and profits, the court, at best for defendants, would now charge them with value of rents and profits in offset againt amount of bids on executions.

XIII. If the court below was right in its decision and ruling, "that the sheriff's sale to Papin and the sheriff's sale

to Duchouquette are each of them void," then it follows that the mortgages were subsisting, and the relation of mortgagor and mortgagee continued at least up to the pretended compromise in December, 1836, and up to that time in the possession of Duchouquette, the mortgagee, was not and could not have been adverse, and the defence of limitations can avail nothing. ( 2 Randolph, 90 ; Angell & Ames, § 5.)

XIV. After forfeiture of mortgage and order or judgment of foreclosure, mortgagees had a right to the mortgaged premises, and although Duchouquette might, in point of fact, have claimed or pretended to claim title under the sheriff's deed made in 1829, Delassus had no cause of action for restoration of the mortgaged property until after the payment and settlement of 1836, and limitations did not and could not commence running until after right of action had accrued.    (Angell v. Ames, as above.)

*Whittelsey*, for defendants in error.

I. That the sheriff's sale and deed of October 22, 1828, passed to the purchaser and his assigns the legal title to the land ; and it is immaterial whether the debt upon which the judgment was rendered was the mortgage debt or not, as far as this suit is concerned, for the reasons following.    (See point 3.)

a. At the date of the sale, (October 22, 1828,) Duchouquette did not own the Brazeau debt, and as far as that debt was concerned did not stand in the relation of mortgagee to Delassus, and thus was at full liberty to buy under *fi. fa.* on the Brazeau judgment.

II. The possession of Duchouquette and his assigns, some of whom are purchasers for value, was the possession of parties claiming, not under, but against the mortgage, and was therefore adverse all the time from 1830 to 1856, the beginning of this suit, and the limitations ran from the date of the entry.

III. Delassus did not treat the mortgage as still in existence in 1836, but treated the sale under the executions as a

valid sale, and received the credit therefor, and then compromised for the balance. His action affirmed the sales and waived his equity of redemption, if there was any.

From this it will appear that the sheriff's sale passed the legal title, and the equities between the parties rested only in evidence outside of the record. That it passed the title at law, or equity of redemption at law, see Jackson v. Hull, 10 John. 481; 4 Kent, C. 183, *n. c.* 184; Yantis v. Broadwell, 10 Mo. 398; Phillips v. Edmonson, 17 Mo. 579; Delassus v. Poston, 21 Mo. 543; S. C., 19 Mo. 425; Lumley v. Robinson, 26 Mo. 364.

*B. A. Hill,* for defendants in error.

I. The sheriff's sale, under execution in favor of Marie T. Brazeau against Charles D. Delassus, on the 22d day of October, 1828, to John B. Duchouquette, for $380, of the land in question, and the deed thereunder, though held by the court below to be void as against the mortgagor, Delassus, and the plaintiff in the execution, the mortgagee, Brazeau, was held to furnish color of title for the entry and possession of defendants under Duchouquette the purchaser.

The rule is well settled that if the title under which the defendant entered be ever so defective, or be void, yet the possession under such void deed or title is adverse. (Ang. on Lim., § 404, and cases cited; Williams v. Dongan, 20 Mo. 186; Draper v. Short, 25 Mo. 197.)

The possession having commenced under a deed void or voidable, twenty years of open, notorious and continuous possession of the land confers an absolute title on the possessor. (Biddle v. Mellon, 13 Mo. 335; Blair v. Smith, 16 Mo. 273; Menkins v. Blumenthal, 27 Mo. 198.)

The equity of redemption is barred by the lapse of twenty years, if the mortgagee holds possession during the period, claiming title. (Bollinger v. Chouteau, 20 Mo. 94; Gordon et al. v. Hobart, 2 Sum. 408; Moore v. Cable, 1 John's C. R. 386–7; Trask v. White, 3 Bro. Ch. C. 289; Jenner v. Tracy, 3 P. Wms. 287; Howland v. Shurtliffe, 2 Met. 26;

Dexter v. Arnold, 1 Sum. 199; Morgan v. Davis, 2 H. & Mc-Henry, 18; Aggers v. Pickerell, 3 Atk. 225; Elmendorf v. Taylor, 10 Wheat. 152; 2 Hilliard on Mort. and cases, § 3.)

Entry by mortgagee for condition broken is a new act and gives a new title. (Goodwin v. Richardson, 11 Mass. 474; Ang. on Lim., § 467.)

II. If the mortgage was satisfied, the remedy was at law, not in equity.

BATES, Judge, delivered the opinion of the court.

Assuming, but not deciding, that the sheriff's sale to Duchouquette was void, the payment by Delassus of the debts secured by the mortgages was a satisfaction of the mortgages. The failure to enter satisfaction on the margin of the record of the mortgages might subject the mortgagees to penalties, but has no effect to keep the mortgages in existence. It was only a failure to supply convenient evidence of a fact accomplished.

After the satisfaction of the mortgages, whatever right Delassus had *was legal, not equitable*, and this suit which prays only equitable relief, was properly decided against the plaintiffs, the representatives of Delassus. The defendants have taken no exception to that part of the judgment which passes from them their title to that part of the land outside of the league square.

Judgment affirmed. Judge Dryden concurs. Judge Bay did not sit, being interested in the questions arising in the case.

Plaintiffs' counsel filed a motion for rehearing, which was overruled.