**Isabel Ann TERRY, Plaintiff-Appellant,**

**v.**

**C. B. CONTRACTING COMPANY, a Corporation, Defendant-Respondent.**

**No. 8356.**

Springfield Court of Appeals.

Missouri.

March 8, 1965.

J. W. Grossenheider, Lebanon, for plaintiff-appellant.

Kay & Quigley, Eldon, for defendant-respondent.

RUARK, Presiding Judge.

This is an appeal from a summary judgment entered in favor of the defendant.

Plaintiff sued to recover damages occasioned to a dwelling house because of blasting and explosives used by defendant in the construction of a sewer project. These facts appear from the petition, admissions, and answers to interrogatories on the part of plaintiff: One Rector and wife were the owners of the property. Plaintiff held a note in the amount of six thousand five hundred dollars which was secured by mortgage deed of trust on the property. The damage caused by the blasting occurred through the months of July to October, 1962. After this happened, Rector, the owner and mortgagor, came to plaintiff and told her, in substance, that the house was seriously damaged, that it "wasn't worth fixing up." "It would cost me more than the house is worth." That he wasn't going to have a thing to do with it further. That he would take a bulldozer and "put it down in the gully"; and more to the same effect. He offered plaintiff a deed "if I wanted it." The upshot of these alleged high-pressure tactics on the part of Rector (who it is indicated might be shown to be insolvent) upon the plaintiff, who was a recently widowed schoolmarm, is that on March 13, 1963, she took a warranty deed from Rector and wife; cancelled the promissory note for six thousand five hundred dollars; and made marginal release of the deed of trust as follows:

"The debt mentioned in the within instrument of writing having been fully paid and discharged, I hereby acknowledge satisfaction in full, and release the property herein conveyed from the lien and encumbrance thereon, this 16 day of March, 1963."

When this cancellation and release was made, Rector gave plaintiff no "paper" of any kind and there was "no other agreement" between the parties. There is no indication that the conveyance to plaintiff was because of any threat of foreclosure; on the contrary plaintiff was urging Rector to continue, but Rector wanted "out" because he was "through" with the house. It was in "terrible shape."

After the cancellation and release, plaintiff put other people in possession under some arrangement whereby she supplied material at a cost which *appears* not to have exceeded three hundred dollars, and the person in possession did certain work in regard to making repairs. It would also *appear* from her deposition that she and the person now in possession have some kind of a contract whereby he is purchasing the house, on payments, at a price of seven thousand eight hundred dollars; but the evidence in regard to this arrangement is so indefinite that we cannot say as a matter of law that the value of the property taken in exchange for the debt equaled or exceeded the amount of indebtedness covered by the deed of trust, so that there was no loss to plaintiff. The summary judgment of the court was based upon the fact of the release and satisfaction of the indebtedness in exchange for a warranty deed.

The first assignment deals with plaintiff's contention that she had a right to sue for impairment of her security.

■ When wrongful injury is done to the mortgaged premises, both owner and mortgagee may have a right of action. These two claims are sometimes joined in the same cause; but the bases of such claims are entirely different. The owner has an action for damages to his freehold which accrues when the injury to the land is suffered; whereas the claim of the mortgagee not in possession is a limited one, not for damage to the land as such but for *impairment of the security* for his loan.[1]

1. 59 C.J.S. Mortgages, § 338, p. 465; 37 A.L.R. Anno., 1120; Sloss-Sheffield Steel & Iron Co. v. Wilkes, 231 Ala. 511, 165 So. 764, 767, 109 A.L.R. 385; Osborne on Mortgages, §§ 128, 129, p. 321; Allstate Finance Corp. v. Zimmerman (5th Circuit) 272 F.2d 323, 325; Craig v. Kansas City Terminal Ry. Co., 271 Mo.

Although some authority can be found to the contrary, the general rule is that the mortgagee's right of action for impairment of security is not dependent upon whether the mortgagor is insolvent.[2] Also, there are cases holding that the mortgagee's right of action is not complete until there has been a foreclosure and a deficiency is established thereby, but other authority (and we think the weight and most recent) is that the mortgagee has a right of action, depending of course upon the particular circumstances, when the injury is suffered and the security is thereby impaired.[3] However, there has been indication by Missouri courts that they incline to the view that a deficiency must first be established by foreclosure.[4]

■■ But regardless of any question as to whether or when the mortgagee's right of action accrues, all authorities agree that when the mortgage debt is discharged the right of action for impairment of the security cannot thereafter accrue (according to the theory of some cases) or is extinguished (according to the views of others); this because the right to sue for impairment is incidental or appendant to, and dependent upon, the right to the protection of and recourse to the security. It is the tail of the dog and, when the dog dies, the tail dies with it. When the debt is extinguished, the security is discharged and the right to maintain an action for impairment of such security is also extinguished.[5]

It is not necessary in this decision to hold, and we do not wish to be understood as holding, that there *never could be* a situation where because of the peculiar circumstances the mortgagee might be forced to make some deal with the owner-mortgagor by way of compromise or extinguishment of the debt, in order to acquire title or possession so as to protect the interest secured and in order to lessen damage or expense; and still thereafter bring and maintain some action in reference to the injury to the land. As to that possibility, sufficient unto the day. It is not the proposition presented in this case. Appellant does not contend that the debt and the lien were not extinguished. It would therefore appear that plaintiff had no cause of action for injury to the mortgagee as such.

■ Appellant's second assignment contends that there is a genuine issue as to whether plaintiff has a valid *assignment* from the mortgagor, and later grantor, Rector. This is obviously based on the freeholder's cause of action as distinguished from the mortgagee's right to sue. We have considerable doubt as to whether or not this contention is a complete departure from the theory of plaintiff's petition; but

516, 197 S.W. 141, 142. See Matthews v. Mo. Pac. Ry. Co., 142 Mo. 645, 44 S. W. 802.

2. 36 Am.Jur. Mortgages, § 356, p. 868; City of Toledo v. Brown, 130 Ohio St. 513, 200 N.E. 750, 752; E. H. Ogden Lumber Co. v. Busse, 92 App.Div. 143, 86 N.Y.S. 1098, 1100.

3. 59 C.J.S. Mortgages § 338, p. 467, Footnotes 55–58; 36 Am.Jur. Mortgages, § 357, p. 869, Footnote 20; Delano v. Smith, 206 Mass. 365, 92 N.E. 500, 501, 30 L.R.A.,N.S., 474; 2 Jones on Mortgages (7th Ed.) §§ 696 and 695(a); see Thompson on Real Estate, Vol. 9, § 4774, p. 469, § 4780, p. 512 et seq.; Planters' Bank v. Lummus Cotton Gin Co., 132 S.C. 16, 128 S.E. 876, 878, 41 A.L.R. 592; Taylor v. McConnell, 53 Mich. 587, 19 N.W. 196.

4. Guaranty Savings & Loan Association v. City of Springfield, Mo.App., 113 S.W. 2d 147, 151, 346 Mo. 79, 139 S.W.2d 955; see Girard Life Ins. Annuity & Trust Co. v. Mangold, 83 Mo.App. 281; Chouteau v. Boughton, 100 Mo. 406, 13 S.W. 877, 878; Heitkamp v. LaMotte Granite Co., 59 Mo.App. 244.

5. See authorities cited under Footnote 1; also 59 C.J.S. Mortgages, § 439, p. 676, and cases at Footnote 23; American Law of Property, §§ 16.160, 16.167; Section 443.060 RSMo1959, V.A.M.S.; Grace v. Gill, 136 Mo.App. 186, 116 S.W. 442; Kennerly et al. v. Burgess' Adm'r, 38 Mo. 440, 443–444; McNair v. Picotte, 33 Mo. 57; see American Nat. Ins. Co. v. City of Port Arthur (C.C.A.Tex.) 62 S.W.2d 256; Benton Land Co. v. Zeitler, 182 Mo. 251, 81 S.W. 193(2), 70 L.R.A. 94.

on the assumption that, by a broad and liberal reading, the petition might be construed to include this (claim of the assignee of mortgagor) we will consider it.

That Rector *could* have assigned his cause of action is not in dispute (see Allstate Finance Corp. v. Zimmerman (5th Circuit) 296 F.2d 797). The question presented is, did he? It is not contended that the conveyance from Rector to plaintiff carried with it an assignment or transfer of the previously accrued cause of action for damages suffered by the grantor; and we think it could not be successfully so contended.[6] But appellant says that the facts would justify an inference of *oral assignment*. In support of such contention she cites only one case, City of Maplewood ex rel. and to use of Citizens' Bank v. Johnson, Mo.App., 273 S.W. 237. That case involved the transfer and sale of tax bills, for consideration and in the ordinary course of business, from a contracting corporation to the bank. The assignment was executed on behalf of the corporation by the secretary of the corporation (a question was raised as to the authority of the secretary to sign it) ; but the president of the corporation was actually present and the tax bills were delivered in his presence. We think this case furnishes little support for appellant here. In her deposition, plaintiff testified fully as to the transaction. She said she had no agreement with Rector. We are unable to find anything which indicates that either plaintiff or Rector at that time intended an assignment of the freeholder's claim for damages, that they ever discussed it, or even *thought* of it. It may be that Rector *should* have assigned his cause of action, if he had one, to the appellant, but judging from his conduct (as related solely by the plaintiff), we are unable to find the basis for an inference of such good intention.

The final assignment is based on the contention that *even though* plaintiff had no such assignment, she *might have obtained one* prior to the trial of the case and thereby might become the real party in interest.

To sustain this contention, appellant cites (only) Glenn v. Thompson, 228 Mo.App. 1087, 61 S.W.2d 210. That was a case where one member of a physician partnership sued to collect a doctor bill. The appellant raised the question of proper parties plaintiff in that he was not protected from a suit by the other partner. At trial of the case, plaintiff introduced in evidence an assignment from his co-partner. The court simply held that the plaintiff was entitled to sue in his own name; and that the debtor was protected by the assignment. Without considering whether it was necessary in the foregoing case to take the assignment into consideration, we think the theory involved is entirely different. There the case involved, or may have involved, a debt owned by co-partners. As stated, supra, any cause of action for damages to the freehold belonged to the owner Rector; there was nothing joint about it.

If a suit can be instituted and maintained by one who has no cause of action but simply hopes to acquire one, what wide and wonderful vistas are opened to the hopeful, would-be litigant. A can sue B for debt, trespass, alienation, or what-not. It develops that B doesn't owe and hasn't wronged A. He did that to *C;* but A hopes that C will assign his claim to him, and on that basis seeks to hold B in court. Although hope enters into the bringing of many law suits, we know of no cause of action which can be stated and maintained simply on the basis of a hope and a prayer. The judgment is affirmed.

STONE and HOGAN, JJ., concur.

6. 16 Am.Jur. Deeds, § 297, p. 607; 26 C.J.S. Deeds § 106d, p. 908; Lancaster v. Connecticut Mut. Life Ins. Co., 92 Mo. 460, 5 S.W. 23, 26; Turner v. Mo. Pac. Ry. Co., 130 Mo.App. 535, 109 S.W. 101; Hilton v. City of St. Louis, 99 Mo. 199, 208, 12 S.W. 657; Love v. Van Every, 18 Mo.App. 196, 203; see White v. Irvine et al., 324 Mo. 342, 22 S.W.2d 778; In re Witherill's Estate, 178 Or. 253, 166 P.2d 129.