Keith **BARKET**, et al., Plaintiffs–
Appellants,

v.

**CITY OF ST. LOUIS**, Defendant–
Respondent.

No. 67396.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 25, 1995.

Gerald Tockman, Guilfoil, Petzall & Shoemake, St. Louis, for appellants.

Tyrone A. Taborn, Julian L. Bush, St. Louis, for respondent.

DOWD, Judge.

Plaintiffs, Keith Barket, et al., appeal from the trial court's grant of summary judgment in favor of Defendant, the City of St. Louis (City). We reverse and remand.

Plaintiffs are the owners of promissory notes issued by P.D. St. Louis Associates, L.P. (Mortgagor). The promissory notes in question were issued on March 2, 1981, and are secured by deeds of trust on real property located in the City known as the Arcade Building. On December 20, 1979, the City, through its Heritage and Urban Design Commission (HUDC), declared the Arcade Building to be a landmark under the provisions of Ordinance 53748. On March 23, 1980, Ordinance 53748 was repealed and Ordinance 57986, the current Heritage and Urban Design Code (Code), was enacted. *See*, St. Louis City, Revised Code § 24.04 et seq. (1994).

On March 3, 1989, Spirtas Wrecking filed an application to demolish the Arcade Building on behalf of Mortgagor. On April 10, 1989, the Building Commissioner sent a letter to Spirtas Wrecking stating that he was denying the permit based on the HUDC's recommendation. Mortgagor appealed the denial of the demolition permit. A hearing was held pursuant to § 24.12.420 of the Code. On August 27, 1990, the Heritage and Urban Design Commissioner affirmed the Building Commissioner's denial of the demolition permit finding that Mortgagor failed to prove that, absent demolition, the Arcade Building cannot be put to a reasonably beneficial use or that it could not obtain a reasonable return on its investment. Mortgagor then filed a petition against the City in circuit court alleging its request for a demolition permit was wrongfully denied.

On July 26, 1993, Plaintiffs, as mortgagees, filed a separate petition in inverse condemnation against the City. In their petition, Plaintiffs allege: (1) that the City effectuated an unauthorized taking of their property interest in the Arcade Building by designating it as a landmark because this designation has destroyed the economic viability of the build-

ing; (2) that the HUDC standards under which the Arcade Building was designated as a landmark are unconstitutionally vague and unenforceable; (3) that the City used the Arcade Building's designation as a landmark to wrongfully deny the application for a demolition permit; and (4) that the unauthorized denial of the demolition permit constituted a taking without just compensation. In their petition, Plaintiffs note that in 1990 Mortgagor was forced to initiate proceedings in Chapter 11 bankruptcy; and in 1991, the City attempted to acquire Plaintiffs' promissory notes at well below face value.

In response, the City filed a motion to dismiss Plaintiffs' petition for failure to state a claim which was overruled. The City then filed a motion for summary judgment alleging Plaintiffs' claims were collaterally estopped because the issue of whether the Arcade Building can be put to any economically viable use had already been decided by an order the circuit court entered in *P.D. St. Louis Associates, L.P. v. City of St. Louis*, the case filed by Mortgagor after the HUDC denied its demolition petition. On August 2, 1993, the circuit court entered an order in *P.D. St. Louis Associates* stating it was ruling on Counts III, V and VII of Mortgagor's Amended Petition. In this order, the circuit court found "there was competent and substantial evidence presented on the whole record that [Mortgagor's] property could be put to a reasonable beneficial use, and that [it] could obtain a reasonable return on its investment in the property, without the issuance of a demolition permit." There is nothing in the record to indicate what happened to the other counts in Mortgagor's petition.

A hearing was held on City's motion for summary judgment; and on September 2, 1994, the trial court entered an order granting summary judgment in the City's favor. In its order, the trial court stated Plaintiffs did not yet have a cause of action because, as mortgagees, they could not recover until after default and foreclosure on the mortgage, when their damages could be determined. In so holding, the trial court relied on *Guaranty Savings & Loan v. City of Springfield*, 113 S.W.2d 147 (Mo.App.1938), *aff'd*, 139 S.W.2d 955, 346 Mo. 79 (1940). The trial

court did not reach the collateral estoppel issue, but it stated it was taking note of the previous order "as the only evidence of whether the mortgagor's property had been 'taken' and not for estoppel purposes as such."

It appears the trial court granted summary judgment solely because it found Plaintiffs' lawsuit was premature. We agree that Plaintiffs' cause of action is premature based on the *Guaranty* case; however, we do not agree that summary judgment is the appropriate ruling.

█ A mortgagee with a security interest in real estate may have a right to compensation if the mortgaged property is taken or damaged for public use because the mortgagee's interest in real estate is considered "property." Mo. Const. Art. 1 § 26; *Guaranty*, 113 S.W.2d at 152[11]; and *Morgan v. Willman*, 318 Mo. 151, 1 S.W.2d 193, 200 (1927); *see also, Terry v. C.B. Contracting Co.*, 388 S.W.2d 349, 351[1] (Mo.App.1965). Further, where a person with an interest in real property is denied a permit to demolish a building because of its historical importance and is thus denied any economically viable use of the property, an inverse condemnation or takings action may be appropriate. *Dempsey v. Boys' Club of City of St. Louis, Inc.*, 558 S.W.2d 262, 267–68[4] (Mo.App.1977); *see also, Lucas v. South Carolina Coastal*, 505 U.S. ——, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); *Browning–Ferris Indus. v. City of Maryland Heights*, 747 F.Supp. 1340, 1347[8] (E.D.Mo.1990).

However, the court in *Guaranty* found the mortgagee's right to payment when the mortgaged property is damaged or taken for public use is contingent upon: (1) whether there has been a breach in the mortgage conditions and a default thereon, and (2) whether the mortgagee is able to show the security interest was impaired by reason of such damage or taking. *Guaranty*, 113 S.W.2d at 152[9].

A mortgagee in a deed of trust has a remedy for the taking in whole or in part of the mortgaged property for public use. He has a cause of action for damages, where the property is damaged for public use and not taken either in whole or in

part; he also has a cause of action for damages against an individual who has taken or damaged the mortgaged property. His cause of action where the property is damaged for public use, or where damaged by an individual, accrues after default in the mortgage and foreclosure and after his loss, if any, is determined.

*Id.* at 151[2–5].

Plaintiffs argue that *Guaranty*'s holding has been overruled by the United States Supreme Court's decision in *Lucas v. South Carolina Coastal,* 505 U.S. at ——, 112 S.Ct. at 2895[3]. In *Lucas,* the United States Supreme Court established unequivocally that "when the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." (Emphasis in original.) *Id.* However, this holding does not affect the *Guaranty* decision because the court in *Guaranty* did not find that a mortgagee is not entitled to bring a taking claim where the mortgaged property has been deprived of all economically beneficial uses; it merely stated that any suit by a mortgagee to recover for a taking is premature if the mortgage is not yet in default. *Guaranty,* 113 S.W.2d at 152[9].

 Even if Plaintiffs have a cause of action against the City for inverse condemnation or a taking of their property without just compensation, their claim is premature based on the *Guaranty* case. As to the propriety of the trial court's grant of summary judgment, however, this court has held that a grant of summary judgment should not be upheld where it is based solely on lack of ripeness because a grant of summary judgment has all the attributes of any other final disposition, including res judicata; and filing a suit prematurely should not prevent a plaintiff from proceeding with an action when it becomes ripe. *Brinson v. Whittico,* 793 S.W.2d 632, 633[2] (Mo.App.1990).

Plaintiffs last argue that the trial court erred in granting summary judgment before they had an opportunity to discover the material facts on the constitutional issue of taking without compensation. The prematurity of their claim makes this issue moot.

Accordingly, the trial court's grant of summary judgment is reversed and the cause is remanded to the trial court to dismiss Plaintiffs' petition without prejudice.

CRANE, P.J., and CRANDALL, J., concur.